## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| Eunice Jernigan, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| GSK Consumer Health, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff Eunice Jernigan ("Plaintiff") alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.    GSK Consumer Health, Inc. ("Defendant") sells raspberry flavored immune supporting beverage mix promoted as containing "Natural fruit flavors" with pictures of bright red raspberries under its Emergen-C brand ("Product").




## I.   CONSUMER AVOIDANCE OF ARTIFICAL FLAVORS

2.   According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

3.   This is because consumers try and avoid ingredients made with chemical additives and synthetic solvents in laboratories.

4.   According to Forbes, almost ninety percent of consumers consider foods without artificial flavors to be more natural and healthier than foods with artificial flavors and would pay more for such foods.

5.   Paul Manning, president of Sensient Technologies, affirmed that "Consumer desire for naturally flavored products is an emerging trend."[2]

6.   According to Nielsen's Global Health & Wellness Survey, the absence of artificial flavors is very important for over 40% of consumers.

7.   The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these

---

[1] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.

[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.

synthetic ingredients.[3]

8.   According to research from Mintel, consumer avoidance of artificial flavors is just as strong as their desire for natural flavors.[4]

9.   While almost half of Americans seek foods with natural flavorings, only ten percent prefer artificial flavorings.

10.   One survey indicated that more than three in four people worldwide are convinced that artificial flavors have no place in any foods they buy.[5]

11.   Surveys by Nielsen, New Hope Network, and Label Insight concluded that between sixty and eighty percent of the public tries to avoid artificial flavors.

## II.   IMMUNE SUPPORT PRODUCT INCONSISTENT WITH ARTIFICIAL FLAVORINGS

12.   Purchasers of products promising immune support expect what they are buying will not only bolster their immune system but not contribute to negative health effects.

---

[3] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.
[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015; Mintel Report, Artificial: Public Enemy No. 1.
[5] What 'Natural' Really Means to Consumers GNT Group's Guide to Global Consumer Demands attests importance of natural colors for future-proof products, July 13, 2017.

13.    However, the addition of artificial flavors to such products is inconsistent with immune support for multiple reasons.

14.    First, artificial flavors stimulate the body to consume foods lacking in nutrients instead of whole, natural foods that humans need to thrive.

15.    Second, "artificial flavoring has been shown to have a wide variety of side effects ranging from headaches, fatigue, and nausea to chest pain, dizziness, an increased risk of cancer and even seizures."[6]

16.    Third, "artificial flavors have been shown to have a worsening effect on people with asthma or predisposed to hyperactivity[] [and] the RNA and thyroid may be affected."

## III.  FLAVOR SOURCE REQUIRED TO BE DISCLOSED

17.    Research shows that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory expectations" about attributes such as its taste and the source

---

[6] Are Artificial Flavors Bad For You?, IIBFY.

of that taste.[7]

18.    Consistent with these principles, the Food and Drug Administration ("FDA"), at the direction of Congress, established regulations to prominently inform consumers of the source of a food's main flavor.[8]

19.    First, the FDA distinguished between flavors, which were substances that imparted taste, and food, which provided nutritional value. 21 C.F.R. § 101.22(a)(1), 21 C.F.R § 101.22(a)(3).

20.    Second, it distinguished between natural and artificial flavor.

21.    It defined "natural flavor" as the "essential oil, oleoresin, essence or extractive" from fruits. 21 C.F.R § 101.22(a)(3).

22.    Natural flavor compounds include (1) nonvolatiles like sugars, amino acids, fatty acids, and organic acids and (2) volatiles like aromatic hydrocarbons, aldehydes, acetals, ketones, alcohols, esters, and sulfur compounds.

23.    In contrast, "artificial flavor" was defined as substances used to impart

---

[7] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Masako Okamoto and Dan Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

[8] This State adopted these federal regulations.

flavor from synthetic or artificial sources. 21 C.F.R. § 101.22(a)(1), 21 C.F.R § 101.22(a)(3).

24.  Third, it required that that whenever "[a] label, labeling, or advertising of a food makes any direct or indirect representations with respect to [a] primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means," that is considered the "characterizing flavor," and its source must be disclosed to consumers. 21 C.F.R. § 101.22(i)(1).

25.  According to one scholar and expert, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[9]

## IV.  FLAVOR OF RASPBERRIES

26.  Taste is a combination of sensations arising from specialized receptor cells in the mouth.[10]

27.  Taste is defined as sensations of sweet, sour, salty, bitter, and umami.

28.  Taste is complex, with the taste of sour including the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples and cherries (malic acid), and wines (tartaric acid).

---

[9] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.
[10] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).

29.   Each of those acids is responsible for unique sensory characteristics of sourness.

30.   Consumer acceptability of the flavor of fruits, such as raspberries, is based on their perceived sweetness, sourness, and tartness.

31.   The prototypical raspberry taste is based on the interaction of free sugars, mainly glucose and fructose, volatile compounds, and predominant organic acids to create its unique tart, sour and sweet flavor.[11]

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |
| Blueberry[12] | Malic Acid | Citric Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid, Succinic Acid |
| Cherry (black) | Citric Acid | Malic Acid |
| Cherry (tropical) | Malic Acid (32%) | Citric Acid |
| Chili Peppers (habanero) | Citric Acid | Malic Acid, Succinic Acid |
| Coconut | Malic Acid | Citric Acid |
| Dragon Fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |

---

[11] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).
[12] Across cultivars, such as Highbush, Jersey, etc.

| | | |
|---|---|---|
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

32.   Raspberries are "tart and tangy [and] often enjoyed for [their] sweet and sour flavor."[13]

33.   While its most predominant organic acid is citric acid, "the sour taste of raspberries is the most prominent characteristic."

34.   This is because "Raspberries contain a naturally occurring acid called malic acid [which] is responsible for the[ir] tart and tangy flavor."

35.   While "The amount of malic acid in raspberries varies depending on the variety and ripeness of the fruit, [] generally, the more ripe the raspberry, the more malic acid it contains."

36.   The amount and proportion of malic acid is a critical factor in producing the preferred tart, sweet and sour raspberry taste valued by consumers.

---

[13] Greener Thumb, Why Do Raspberries Taste Sour, Rather Be Gardening, July 29, 2023.

## V.   LABEL MISLEADING ABOUT FLAVOR SOURCE

37.   The front label statements of "Natural fruit flavors" and "Flavored Fizzy Drink Mix with other Natural Flavors" and pictures of freshly picked, ripe raspberries with their stems appeal to the more than seven out of ten consumers who avoid artificial flavors.

38.   However, the ingredient list in small print on the back – coupled with laboratory testing – reveals the Product's raspberry taste is derived in part from artificial flavoring ingredients.



**Other Ingredients:** Sugar, Fructose, Citric Acid, Maltodextrin. **Contains <2% of:** Acacia, Beet Juice Concentrate (color), Caramel Color, Fruit Juice Concentrates (blackberry, raspberry, cherry) (color and flavor), Glycine, L-Aspartic Acid, <mark>Malic Acid</mark>, Natural Flavors, Rebaudioside A (extracted and purified from natural stevia leaf), Silicon Dioxide, Tartaric Acid.

39.   A consumer who reviewed the ingredient list would be unaware that the malic acid used provides part of the fruit and raspberry taste and is an artificial flavoring ingredient.

40.   This is because malic acid has two isomers, or arrangements of atoms, L-Malic Acid and D-Malic Acid, which are like right and left-hand versions of the

same molecular formula.[14] 21 C.F.R. § 184.1069.



41.   L-Malic Acid occurs naturally in raspberries while D-Malic Acid does not occur naturally anywhere.

42.   D-Malic Acid is most found as a racemic mixture of the D and L isomers, or DL-Malic Acid, commercially made from petroleum.

43.   It is made through a catalytic process with numerous chemical reactions, including heating maleic anhydride with water under extreme pressure at roughly 180°C.

44.   This results in an equilibrium mixture of malic and fumaric acids.

45.   The soluble fumaric acid is filtered off and recycled, and the synthetic, or DL-, malic acid is concentrated and crystallized.

46.   Laboratory analysis with chiral HPLC and/or enzymatic methods with D-malate dehydrogenase (D-MDH) concluded or would conclude that the Product uses artificial DL-Malic Acid, by identifying the synthetic D-isomer.

_____

[14] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

47. This was because D-Malic acid was preferentially oxidized over L-Malic acid.

48. D-Malic Acid is an artificial flavor because it imparts the taste of fruits including raspberries to the Product, rendering "Natural fruit flavors" and "Flavored Fizzy Drink Mix with other Natural Flavors" false and misleading by omission.

49. Federal and state regulations require that because the Product contains DL-Malic Acid that imparts the flavor of fruits including raspberries, "Raspberry" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Raspberry Flavored" or "Artificially Flavored Raspberry." 21 C.F.R. § 101.22(i)(2).

50. The combination of DL-Malic Acid with sugars is not equivalent to any natural fruit flavors and natural raspberry flavors.

51. The addition of DL-Malic Acid imparts, creates, simulates, resembles and/or reinforces the tart, tangy, sour, and sweet taste that fruit flavors such as raspberry are known for.

52. Defendant could have added more flavorings from fruits including raspberries, or L-Malic Acid from fruits including raspberries, but used artificial DL-Malic Acid because it cost less and/or more accurately simulated, resembled, and/or reinforced the taste of fruit flavors including raspberry flavor.

53. DL-Malic Acid is not a natural fruit flavor as defined by federal and state

regulations, because it is not from a fruit, vegetable, or other natural source, but from petroleum and made through chemical reactions.

54.   DL-Malic Acid does not supplement, enhance, or modify the original taste of raspberries because it is a core component of raspberry flavor. 21 C.F.R. § 170.3(o)(11).

## JURISDICTION AND VENUE

55.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

56.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

57.   Plaintiff is a citizen of Florida.

58.   Defendant is a citizen of Delaware and New Jersey.

59.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

60.   The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at thousands of grocery stores, convenience stores, warehouse club stores, big box stores, pharmacies and online, throughout this State.

61.   Venue is in the Orlando Division in this District because Plaintiff resides in Osceola County and a substantial part of the events or omissions giving rise to

these claims occurred in Osceola County, her purchase and consumption of the Product in reliance on the labeling and marketing identified here, and awareness they were false and misleading.

## PARTIES

62.   Plaintiff Eunice Jernigan is a citizen of Osceola County, Florida.

63.   Defendant GSK Consumer Health, Inc. is a Delaware corporation with a principal place of business in New Jersey.

64.   Until very recently, the Product was manufactured by Alcacer Corp., which is the name appearing on the packaging.

65.   Defendant sells Emergen-C immune support beverage mix.

66.   Plaintiff read and relied on "Natural fruit flavors" and "Flavored Fizzy Drink Mix with other Natural Flavors" and pictures of freshly picked ripe raspberries with their stems on the Product's front label.

67.   Plaintiff expected the Product's raspberry taste to be only from natural fruit flavors because the label said this and lacked any reference to artificial flavoring.

68.   Based on experience as a consumer, Plaintiff expected that if the Product's main taste was from artificial flavoring, this would have been disclosed to her prominently on the front label.

69.   Plaintiff expected the Product's raspberry taste was from natural fruit

flavors such as natural raspberry flavor and not artificial fruit flavoring ingredients.

70.   Plaintiff is part of the majority of consumers who avoid artificial flavors for reasons related to health, nutrition, and the environment.

71.   Plaintiff did not expect a product promoting immune support would contain artificial flavoring ingredients because of the connections drawn between their consumption and adverse health effects.

72.   Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores such as pharmacies, grocery stores, big box stores and elsewhere in Osceola County, between August 2020 and the present.

73.   Plaintiff bought the Product at or exceeding the above-referenced price.

74.   Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components such as getting their main fruit taste only from natural fruit flavors.

75.   Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

76.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $11.99 for thirty packets,

excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

77.   Plaintiff paid more for the Product than she would have paid had she known the representations were false and misleading, as she would not have bought it or would have paid less.

## CLASS ALLEGATIONS

78.   Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Florida Class:** All persons in Florida who purchased the Product within the statutes of limitations for each cause of action alleged.

79.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

80.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

81.   Plaintiff is an adequate representative because her interests do not conflict with other members.

82.   No individual inquiry is necessary since the focus is only on Defendant's

practices and the class is definable and ascertainable.

83.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

84.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

## COUNT I

## Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

85.   Plaintiff incorporates by reference preceding paragraphs 1-54.

86.   Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

87.   Defendant violated and continues to violate FDUTPA by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

88.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions, that its raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients.

89.   The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive

16

Plaintiff and the public into believing the Product's raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients.

90. Plaintiff and class members relied upon these representations about natural fruit flavors and omissions about artificial flavoring in deciding to purchase the Product.

91. Plaintiff's reliance was reasonable because of the Emergen-C reputation for promoting strong immune systems for decades.

92. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

93. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

94. Plaintiff and class members are entitled to damages in an amount to be proven at trial.

## **COUNT II**

### **False and Misleading Adverting, Fla. Stat. § 817.41**

95. Plaintiff incorporates by reference preceding paragraphs 1-54.

96. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

97.   Defendant made misrepresentations and omissions of material fact, that the Product's raspberry taste was from natural fruit flavors and not artificial flavoring ingredients, through its advertisements and marketing, through various forms of media, product descriptions, and targeted digital advertising.

98.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

99.   Defendant knew that these statements were false and/or misleading.

100. Defendant intended for consumers to rely on its false statements for the purpose of selling the Product.

101. Plaintiff and class members did in fact rely upon these statements.

102. Reliance was reasonable and justified because of the Emergen-C reputation as the leader in immune support products, honestly marketed to consumers.

103. As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product.

104. Plaintiff and class members are entitled to damages as set forth above.

## COUNT III

## Breach of Express Warranty

105. Plaintiff incorporates by reference preceding paragraphs 1-54.

106. The Product was manufactured, identified, marketed, and sold by

Defendant and expressly warranted to Plaintiff and class members that its raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients.

107.

108. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

109. Defendant knew the product attributes that potential customers like Plaintiff were seeking, an immune supporting product which contained natural fruit flavors, because consumers believe such flavorings are healthier than those from artificial sources, and developed its marketing and labeling to directly meet those needs and desires.

110. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that its raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients.

111. Defendant affirmed and promised that the Product's raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients.

112. Defendant described the Product so Plaintiff and consumers believed its

raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

113. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

114. This duty is based on Defendant's outsized role in the market for immune support products, custodian of the Emergen-C brand.

115. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

116. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Products' express and implied warranties associated with the Product.

117. Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

118. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

## COUNT IV

## Fraud
## (Fed. R. Civ. P. 9(b) Allegations)

119. Plaintiff incorporates by reference preceding paragraphs 1-54.

120. Defendant misrepresented that the Product's raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients.

121. Defendant omitted the required "artificially flavored" disclosure from the front label which was required to truthfully identify the source of the Product's raspberry taste.

122. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

123. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

124. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

125. WHO: Defendant, GSK, made material misrepresentations and/or

omissions of fact in its advertising and marketing of the Product by representing its raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients,

126. WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product's raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients.

127. Defendant knew or should have known this information was material to all reasonable consumers and impacts consumers' purchasing decisions.

128. Defendant conducts research on consumer preferences and is aware of consumer demand for products without artificial flavors.

129. Yet, Defendant has represented and/or continues to represent that the Product's raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients.

130. WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product's raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients, continuously throughout the applicable Class period(s) and through the filing of this Complaint or until early in 2023.

131. WHERE: Defendant's material misrepresentations and omissions, that

the Product's raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients, were made in the advertising and marketing of the Product, on the front of the packaging, which all consumers buying would inevitably see and take notice of.

132. HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that its raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients.

133. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Product.

134. WHY: Defendant misrepresented that the Product's raspberry taste was from natural fruit flavors such as natural raspberry flavor, instead of artificial flavoring ingredients, for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium, in part based on consumer demand for products without artificial flavoring ingredients.

135. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout this State.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

23

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   August 24, 2023

Respectfully submitted,

/s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Lead Counsel for Plaintiff*

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff*
*\*Pro Hac Vice* Application Forthcoming

24